IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LORI GROHOL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MIDDLE DISTRICT OF PENNSYLVANIA AND OFFICE OF DISCIPLINARY COUNSEL

Civil Action No.

INDIVIDUAL COMPLAINT

1. Lori Grohol now files this individual complaint against the Middle District of Pennsylvania for violating the Constitution since the filing of 4:26-cv-1437.
2. The Rooker-Feldman, Younger, and all other judicially created doctrines violate the Constitution in a plethora of ways, including Article I vesting.
3. Article IV allows litigants to bring claims against Courts when they violate Article I.

4. In the 1800s, a judge who wanted to keep his slaves tried to enact a law that Article IV does not allow litigants to bring claims, but there is nothing in the Constitution that would make the opinion of a judge from the 1800s relevant, whether it was expressed in a case or an opinion article.
5. According to the Constitution, once a Plaintiff files a claim, the Court should simply schedule it for a jury trial.
6. When Courts become overloaded with jury trials, the Constitution says judges can quit, because there are plenty of people in America who would be happy to be judges, or the Courts can ask the legislature for more funding and more courts .
7. Throughout the 1700s and mid1800s courts mostly complied.
8. However, in the 1800s, paid lawyers and bar associations started systematically taking rights away from litigants and giving them to the Courts.
9. Eventually, Courts decided in the 1900s that, instead of going to Congress for more funding, they could just diminish the jury trial right with court-created doctrines and Rules.
10. The Jury Trial Right is a fundamental right.

11. The Court would need to produce empirical evidence that the Rooker-Feldman or Younger doctrines provide a benefit, that there is a statistically significant difference between the amount of benefit with and without the doctrines, and that they are narrowly tailored or the least restrictive option to achieve that a compelling government interest.

12. Worse, the Courts illegally gave themselves essentially unfettered discretion over when they could choose to make the same amount of money for less work.

13. Thus, they can decide to discretionarily dismiss cases if it would give citizens or litigants more power, while retaining jurisdiction over cases if the outcome would give courts more power.

14. If there are statistically significant differences in whether the Court outright ignores, or delays, ruling on appropriately filed TROs when those TROs are filed against judges or organizations that spend millions of dollars lobbying to increase the power of judges, versus when those TROs are filed against any other entity, then the Court itself is breaking the law.

15. It appears that the Court grants appropriately filed TROs, on average, within 41 hours, and never ignores them, except when they are filed

against the Court and political entities who lobby to increase the power fo the Court.

16. That is illegal.

17. If that illegal behavior is tied to 42 U.S.C. 1985, 1986, actual damages to counsel's clients, or a variety of other legal theories, then all of counsel's clients can, and will, sue the Court.

18. Here, the Middle District of Pennsylvania violated constitutional law by ignoring appropriate anti-retaliation TROs in Plaintiff's agent and counsel v. ABA, and now it is violating constitutional law by ignoring appropriate anti-retaliation TROs in Grohol v. NPLS, and Plaintiff incorporates by reference those complaints, attached hereto as Exhibit A.

19. Plaintiff seeks declaratory and injunctive relief under the First Amendment, the Fifth Amendment, Article 3, Article 6, 42 U.S.C. § 1985(2), 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 1651, 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, Federal Rule of Civil Procedure 65, and this Court's equitable authority to prevent unconstitutional action by federal officers.

**Parties**

20. Plaintiff Lori Grohol is an individual resident of Pennsylvania.

21. Plaintiff is the plaintiff in Lori Grohol v. AOPC, et al., Civil Action No. 4:26-cv-1437, pending in the United States District Court for the Middle District of Pennsylvania.

22. Plaintiff brings this action individually and seeks prospective declaratory and injunctive relief to protect her own access to court, her own right to nonretaliatory adjudication, her own right to chosen counsel, her own right to petition through counsel, and her own right to have emergency constitutional motions processed without viewpoint discrimination or institutional favoritism.

23. Plaintiff's counsel and agent, Paige Martineau, is an attorney licensed in Pennsylvania, counsel for Plaintiff, counsel for SLAAY, and counsel or prospective counsel for other clients pursuing similar anti-retaliation, court-access, bar-retaliation, and legal-aid retaliation claims.

24. Plaintiff's counsel threatened subpoenas and litigation as part of nonfrivolous litigation activity concerning Wills for Heroes, Wills for Veterans, bar associations, legal-aid malpractice, judicial conduct,

emergency motion practice, and retaliation against civil-rights litigants.

25. Plaintiff's counsel's threatened subpoenas, litigation threats, filed lawsuits, witness identifications, preservation demands, public criticism, and legal advocacy are protected speech and petitioning activity.

26. Plaintiff relies on counsel to prosecute 4:26-cv-1437 and related emergency motions, and retaliation against counsel for protected litigation activity directly impairs Plaintiff's right to petition, access courts, receive counsel of choice, present evidence, subpoena witnesses, and obtain neutral adjudication.

27. Defendant United States District Court for the Middle District of Pennsylvania is a federal judicial entity headquartered in Scranton, Pennsylvania, with courthouses and judicial officers located throughout the Middle District of Pennsylvania.

28. Defendant exercises judicial and administrative authority over filings, motions, emergency motions, temporary restraining order requests, preliminary injunction requests, docketing, scheduling, hearings, case

management, and adjudication in civil actions filed within the Middle District of Pennsylvania.

29. Defendant acted through judges, clerks, court personnel, administrative practices, standing procedures, case-management decisions, docket practices, and orders entered in cases filed by Plaintiff, Plaintiff's counsel, Plaintiff's counsel's clients, or similarly situated litigants.

30. To the extent the Court determines that the United States District Court for the Middle District of Pennsylvania is not the proper nominal defendant for prospective constitutional relief, Plaintiff names as Defendants the responsible federal officers, including the Chief Judge of the United States District Court for the Middle District of Pennsylvania, the Clerk of Court, and any assigned judicial or administrative officer responsible for the challenged scheduling, docketing, hearing, and emergency-motion practices, in their official capacities only for declaratory and prospective injunctive relief.

31. Plaintiff seeks injunctive relief requiring federal judicial officers and court personnel to process emergency motions neutrally, to schedule hearings without viewpoint discrimination, to refrain from retaliation

for threatened subpoenas or litigation, and to apply the same emergency-motion procedures to litigants who criticize judges and lawyers that the Court applies to litigants who praise, protect, or support judges and lawyers.

**Jurisdiction and Venue**

26. This action arises under the Constitution and laws of the United States.

27. The Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings claims arising under the First Amendment, the Fifth Amendment, Article 3, Article 6, 42 U.S.C. § 1985(2), 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and federal equitable principles allowing prospective relief against unconstitutional federal action.

28. The Court has jurisdiction to issue declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists concerning whether Defendant may deny, delay, ignore, or refuse to schedule emergency anti-retaliation motions because Plaintiff, Plaintiff's counsel, or Plaintiff's counsel's clients threatened subpoenas, threatened litigation, filed litigation, criticized judges, criticized courts, criticized bar associations, or expressed disfavored viewpoints about the legal profession.

29. The Court has jurisdiction to grant further necessary and proper relief under 28 U.S.C. § 2202 after reasonable notice and hearing.

30. The Court has authority to order a speedy hearing of a declaratory-judgment action under Federal Rule of Civil Procedure 57.

31. The Court has authority to issue temporary restraining orders and preliminary injunctions under Federal Rule of Civil Procedure 65.

32. The Court has authority under 28 U.S.C. § 1651 to issue writs necessary or appropriate in aid of its jurisdiction.

33. The Court has mandamus jurisdiction under 28 U.S.C. § 1361 to compel federal officers or employees to perform nondiscretionary duties owed to Plaintiff, including duties to accept filings, docket motions, provide access to court processes, and perform judicial administrative functions without unconstitutional discrimination or retaliation.

34. The Court has equitable authority to restrain unconstitutional and ultra vires conduct by federal officers where prospective relief is necessary to prevent ongoing constitutional injury.

35. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(e) because Defendant is located in this district, the responsible federal officers perform their official duties in this district, the challenged

emergency-motion practices occurred in this district, Plaintiff's underlying case is pending in this district, and a substantial part of the events giving rise to these claims occurred in this district.

36. Venue is also proper because the challenged denial, delay, refusal to schedule hearings, refusal to require briefing, and disparate treatment of emergency motions occurred in cases pending in the United States District Court for the Middle District of Pennsylvania.

37. Assignment to a neutral judge outside the Middle District of Pennsylvania is necessary because the complaint challenges institutional practices, judicial conduct, case-management practices, emergency-motion practices, and alleged bias within the Middle District of Pennsylvania itself.

38. Recusal or reassignment is warranted under 28 U.S.C. § 455 because the impartiality of any judicial officer whose conduct, colleague, court, institution, emergency-motion practice, or administrative system is challenged may reasonably be questioned.

39. Transfer, designation, or assignment of an outside judge is necessary to preserve the appearance and reality of neutral adjudication.

40. Plaintiff preserves all arguments that federal judicial officers may not decide the legality of their own alleged retaliation, viewpoint discrimination,

selective emergency-motion practices, refusal to schedule hearings, refusal to require briefing, or institutional self-protection without violating due process and the requirement of a neutral decisionmaker.

**Statement of Facts**

32. The Middle District of Pennsylvania has violated the Constitution by ignoring appropriate TROs if they are (1) filed by Paige Plaintiff's agent and counsel, Plaintiff's counsel, or (2) express viewpoints that judges, bar associations, courts, and  paid lawyers are evils that have destroyed society, while granting absurd, asinine, and totally illegal TROs filed by bar associations who spend millions of dollars lobbying to increase the power of judges and decrease the power of individuals and the people relative to the judges.
33. The problem with viewpoint discrimination is obvious and does not need to be stated.
34. The problem with statistically significant differences in trends filed Plaintiff's agent and counsel is that Plaintiff's agent and counsel was employed by the Middle District of Pennsylvania for three one-year terms, which were all renewed by Judge Matthew Brann on behalf of Judge Gerald Cohn because of Plaintiff's agent and counsel's excellent legal skills and performance.

35. Her skills were especially important because the entire time, Judge Gerald Cohn was engaging in massive ethical violations.

36. Cohn never came to Pennsylvania to work.

37. He was a remote recalled retired judge.

38. He never spent a single minute of those three years working on the cases.

39. His law clerks, including Plaintiff's agent and counsel, read the case file, decided whether to grant the appeal, and drafted every single word of the decision, from beginning to end.

40. Cohn would periodically log in and move completed decisions from the "review" folder to the "complete" folder.

41. He did not ever read any of the case materials or edit the words written by his clerks, in any way, even for obvious typos.

42. In the spring of 2017, at luncheon for another employee towards the end of Plaintiff's agent and counsel's employment with Middle District, Plaintiff's agent and counsel sat directly next to Judge Brann and Judge Arbuckle.

43. She was deciding whether to switch to legal aid or go to Tulsa with Cohn.

44. Cohn had begged her to come to Tulsa because her work was "brilliant."

45. Brann and Arbuckle commented on the reputation Cohn had in the Middle District because of Plaintiff's agent and counsel's excellent work, and encouraged her to stay in the federal judiciary rather than switch to legal aid.

46. Plaintiff's agent and counsel reminded them, as she had many times, that she was uncomfortable with how Cohn had never spent a moment working for the District, while signing his name to all of the decisions.

47. She asked the judges to imagine how it would feel to have your disability case denied by a judge who never even looked at the file and did not play a role in the decision.

48. They appeared horrified, angry, and enraged that she would question the ethics of the Court.

49. Law clerks are not required to pass the bar or join the bar, so when Plaintiff's agent and counsel denied many of those claimants disability cases, she did not have bar licensure (she voluntarily joined the bar midway through the clerkship).

50. Judge Brann has now claimed that Plaintiff's agent and counsel deserves to be punished, sanctioned, berated, and belittled because she claims that the bar exam does not measure if competence.

51. If it is frivolous to claim that the bar exam does not measure competence, and the Court is saying that all lawyers and judges should be required to be pass the bar exam, then it should notify all of the disability claimants who had their appeals denied by Plaintiff's agent and counsel, without any review by Cohn, and give them the opportunity to submit their appeals again.

52. These are peoples lives.

53. When Plaintiff's agent and counsel denied disability for a claimant, she was often denying it for life, and destroying their lives and the lives of their families.

54. There is no disability in our country other than Social Security disability.

55. If it is true that Judges and lawyers should be required to pass the bar exam, then someone who has already passed the bar exam should re-review every Social Security case Judge Cohn denied in the Middle District, and notify the litigants that someone who was not competent is the person who decided their decision.

56. Years later, in the spring of 2025, Plaintiff's agent and counsel posted on Facebook about a different luncheon she had attended with Judge Brann.

57. Though she did not name him, she described a lunch with court staff at the Brickyard in Williamsport where someone made a "joke" that the Defendants who appeared in Brann's courtroom were "innocent until proven guilty, right?" with heavy sarcasm, and everyone, including Brann, laughed.

58. She also posted about how the same court officials would brag, even to groups of visiting students, about how they know locations in the hallways

59. Plaintiff's agent and counsel is informed and believed Brann became aware of these posts.

60. Even if he had not, he was required to recuse himself before engaging in a tirade of illegal, ex parte, sua sponte orders.

61. The final straw appeared to be a Motion Plaintiff's counsel filed in the James McNeal case on the day of the September 30, 2025 CJRA deadline. See, attached, McNeal case.

62. Plaintiff's counsel explicitly noted that it had been filed on the CJRA deadline and might have been rushing.

63. Within the month, Judge Brann was entering illegal footnotes and illegal orders retaliating against Plaintiff's counsel for protected First Amendment activities.

64. Plaintiff's agent and counsel had repeatedly expressed concerns to Brann, Arbuckle, and others, regarding the courts obsession with meeting the CJRA deadline, and that the court will rush through cases and file them en masse around March 31 and September 30 each year, out a selfish desire to improve their case statistics, without regard to those litigant's rights to the same full and fair opportunity to be heard that other litigants had.

65. In the James McNeal case, Judge Brann had already issued on incorrect Order on a CJRA deadline, the March deadline for the previous year.

66. Judge Brann and Judge Mark Conway had been so legally and logically incompetent that they had misread a simple two-sentence statute, illegally imposed fees, mocked Plaintiff's agent and counsel for not submitting a long enough brief on the subject, then eventually granted her Motion for Reconsideration after she pointed out that "not much elaboration in a brief is required when the statute is two

sentences wrong and they picked the sentence that applies only to prisoners."

67. After she had to spend dozens of pro bono hours fixing the incompetent legal reasoning by Judge Brann and Judge Conway, for which they were paid hundreds of thousands of taxpayer dollars, she obtained an Order that the Court would obtain transcripts, and that she would not be required to file a brief until after the transcripts were obtained.

68. The Court apparently (1) completely forgot they entered this order and (2) failed to review the docket, because it then entered a denial in the McNeal's appeal without ordering the transcripts or allowing Plaintiff's agent and counsel to file her brief.

69. This second incompetent and illogical decision occurred on the next CJRA deadline, on September 20, 2025.

70. On October 15, 2025, Plaintiff's counsel filed a Motion for Reconsideration and explicitly outed Brann's practice of rushing to file decisions on the CJRA deadline.

71. The previous week, Judge Conway had admitted, on the record, to an ethical violation in the McNeal case when he admitted, on the record,

that he had told her to settle the case because it was in her best interest because he was planning to rule against her.

72. Conway's previous statements had been off the record.

73. For instance, at the end of the McNeal case, Conway looked at the Court reporter, and said "off the record? [she nods] Are you sure we are off the record? [She says yes] [Conway points his finger at Plaintiff's agent and counsel] I just did you a favor. Do you get it? I just did you a favor. [Conway looks at Stephen Bresset and smiles] Where are you going for lunch?"

74. Judge Brann has refused, for years, since being informed of this audio file, to allow McNeal to obtain it, or to review it himself, to see if Conway is violating McNeal's, or if he said the words as claimed.

75. This failure to supervise the bankruptcy courts is also going to lead to dozens of clients suing the Middle District.

76. Fortunately, in October of 2025, Conway admitted to his ethical violations when he admitted on the record that he told counsel to settle because it was in her client's best interest.

77. Conway frivolous argues that if said "I told you to settle because it was in the best interest of your client" instead of "I pressured you to

settle because it was in the best interests of your client," then he did not violate any ethical rules.

78. The public would find this to be an ethical violation, and the public is more than competent of assessing same.

79. Plaintiff's agent and counsel submitted this transcript, Conway's refusal to provide the audio, plus the fact that the Court had totally forgotten that it had promised to order transcripts and allow briefing, and the fact that this was a decision issued on the CJRA deadline, which suggests the Court was rushing, in the Motion to Reconsider.

80. Brann had told Plaintiff's agent and counsel at the same 2017 luncheon not to mention how the Court obsesses over the CJRA deadline at the expense of litigants.

81. Brann then ignored appropriate TROs from Plaintiff's counsel, and granted asinine and illegal TROs from the opposing party, the Pennsylvania Bar Association, which lobbies heavily to decrease the power of the people and to increase the power of judges.

82. Based upon a review of thousands of dockets, which is ongoing, judges in the Middle District have never granted a more asinine, incompetent, absurd, and illegal TRO than the TRO filed by the PBA in Plaintiff's agent and counsel v. ABA.

83. The PBA claimed that because Plaintiff's agent and counsel had engaged in First Amendment activities, they had taken adverse action, and deprived the public of Wills for Heroes events.

84. Obviously this means Plaintiff's agent and counsel would be entitled to an injunction, because the PBA was admitting guilt.

85. Instead, Judge Brann decided that the PBA, who has spent millions of dollars to increase the power of judges and decrease the power of the people, had the right to a TRO solely based on the fact that (1) Plaintiff engaged in First Amendment activities like protesting or sending subpoeanas and (2) the PBA did not like that.

86. Plaintiff's agent and counsel had filed a TRO that the possible damages to her were wrongful arrest, wrongful detention, loss of reputation, per se constitutional violations, and harm to her clients.

87. The Court had said those harms were not enough.

88. To conclude that the mere exercise of First Amendment activities, alone, is a harm unto itself, is absurd.

89. What was most absurd was that Plaintiff's agent and counsel had agreed to the entry of the TRO pending briefing, and requested two weeks to brief the issue, but the Court refused to allow briefing, ignored her offer to consent to the TRO during briefing, and simply

entered a mass restraining order that violated almost every fundamental constitutional provision, especially the one that a judge's right to regulate his courtroom gives him absolutely no rights to change the substantive rights.

90. A review of the Court's dockets reviews that every other similar TRO (asinine, absurd, no legal basis, unconstitutional, unsupported by evidence) has been denied.

91. It is a violation of the Constitution to have statistically significant differences based on viewpoint or personal bias with regard to (1) the number of sua sponte decisions (2) use of Rule 8, Rule 12, or any other federal rule and (3) the grant or denial of TROs, and any delays thereto.

92. Plaintiff assumes the Court will try to deny Plaintiff's right to contract and Plaintiff right to chosen counsel based on a court-concocted rule that they can remove lawyers if they might be witnesses in front of a jury, but (1) as this lawsuit proves, courts have eliminated the jury trial right, so any removal of an attorney should not occur until jury trial is actually scheduled, since it is so unlikely to happen, and (2) Grohol's and the Doe clients have constitutional rights override any

court-concocted rule the Court tries to impose to deprive them of counsel.

Count 1

First Amendment Retaliation Against the Middle District Defendants and ODC Defendants

93. Plaintiff incorporates all preceding paragraphs.

94. Plaintiff brings these causes of action to address acts which have occurred on or after the filing of her complaint in 4:26-cv-1437.

95. Before the Court invokes her right to appeal-the Court needs to actually research whether her right to appeal limits, in any way, her right to bring claims against the Court.

96. If a Court was denying continuances only to black litigants, they would not be limited to the thirty day appeal period for the denial of continuances, they would have the full amount of time to bring the underlying cause of action.

97. It is absurd and nonsensical that the addition of a right-the right to appeal-would be intended to diminish the exercise of other rights.

98. The founding fathers viewed courts and judges as the most tyrannical and the most likely to destroy the jury trial right and take power from citizens, and that is exactly what they have done.

99. An employee's right to appeal a decision by an employer, or to appeal a decision that was announced alongside a scathing tirade, would not change the employee's right to file litigation about harassment or damages or the tirade or disparate impact or statistically significant differences in practices.

100. Therefore the right to appeal is irrelevant to this case, Grohol will be appealing the Court decisions, but she still has every right to file a separate lawsuit that entering the decisions in the first place violated the law.

101. The elements of First Amendment retaliation are protected First Amendment activity, retaliatory action sufficient to deter a person of ordinary firmness, and protected activity as a substantial or motivating factor in the retaliation.

102. The Middle District Defendants and ODC Defendants violated the First Amendment because they punished, chilled, delayed, ignored, selectively burdened, or failed to protect Plaintiff, Plaintiff's counsel and agent, SLAAY, witnesses, clients, and cooperating

persons because Plaintiff's counsel threatened subpoenas, threatened litigation, filed litigation, criticized judges, criticized courts, criticized bar associations, criticized lawyer self-regulation, criticized legal-aid malpractice, and sought anti-retaliation emergency relief.

103. Plaintiff's counsel engaged in protected First Amendment activity by threatening subpoenas against Wills for Heroes participants, bar actors, lawyers, judges, and court-connected witnesses with relevant factual knowledge.

104. Plaintiff's counsel engaged in protected First Amendment activity by threatening nonfrivolous litigation, filing nonfrivolous litigation, demanding preservation, identifying witnesses, filing emergency motions, seeking reconsideration, criticizing court conduct, and asserting that courts, judges, bar associations, paid lawyers, and lawyer-regulatory entities had retaliated against Plaintiff, SLAAY, disabled veterans, and legal-aid clients.

105. The Middle District Defendants took adverse action by denying, delaying, ignoring, or refusing to schedule hearings on Plaintiff's anti-retaliation TROs and emergency motions while

allegedly granting, hearing, or acting more favorably on TROs filed by bar-connected or judge-protective entities.

106. The Middle District Defendants took adverse action by resolving or accepting factual causation issues against Plaintiff without requiring Defendants to brief the issues, produce evidence, submit witnesses, or appear for cross-examination.

107. The Middle District Defendants took adverse action by treating Plaintiff's counsel's protected threats of subpoenas, litigation, protests, and witness identification as harm to Defendants rather than as protected petitioning and direct evidence of retaliation.

108. The ODC Defendants took adverse action by failing to investigate court-connected, bar-connected, and disciplinary-system retaliation called to their attention while permitting disciplinary authority, disciplinary threats, ethics accusations, or professional-regulation pressure to chill Plaintiff's counsel's protected litigation activity.

109. The ODC Defendants took adverse action by giving judges, bar officers, lawyers, and court-connected actors practical immunity from disciplinary scrutiny when they retaliated against Plaintiff's counsel

for threatening subpoenas, threatening litigation, filing litigation, criticizing malpractice, and challenging judicial and lawyer power.

110. The adverse actions would deter a person of ordinary firmness from continuing to threaten subpoenas, file litigation, criticize judges, criticize bar associations, pursue emergency relief, represent unpopular clients, or expose retaliation by court-connected actors.

111. The causal connection is shown by the close timing between Plaintiff's counsel's protected threats, filings, criticism, and motions and the challenged delays, denials, non-hearings, selective emergency-motion treatment, disciplinary non-protection, and retaliatory professional consequences.

112. The causal connection is also shown by statements and conduct treating threatened litigation, subpoenas, and criticism as misconduct, disruption, incivility, threat, or grounds for exclusion rather than as protected First Amendment activity.

113. The Middle District Defendants and ODC Defendants had no lawful interest in punishing or burdening Plaintiff, Plaintiff's counsel, SLAAY, witnesses, or clients because Plaintiff's counsel threatened

subpoenas, threatened litigation, filed litigation, criticized judges, criticized courts, or challenged lawyer self-regulation.

114. Plaintiff is entitled to declaratory relief, prospective injunctive relief, anti-retaliation protection, equal emergency-motion treatment, an order requiring briefing and hearing on emergency motions, preservation relief, fees where available, costs where available, and all further relief the Court deems proper.

Count 2

First Amendment Viewpoint Discrimination Against the Middle District Defendants and ODC Defendants

16. Plaintiff incorporates all preceding paragraphs.

17. The elements of First Amendment viewpoint discrimination are governmental regulation or burdening of speech, discrimination based on the speaker's viewpoint, and absence of a compelling justification.

18. The Middle District Defendants and ODC Defendants violated the First Amendment because they treated Plaintiff, Plaintiff's counsel, SLAAY, and similarly situated litigants worse because they expressed the viewpoint that courts, judges, bar associations, lawyer self-regulation, and paid lawyers have harmed the public and violated the Constitution.

19. Plaintiff's counsel expressed the disfavored viewpoint that judicially created doctrines, delayed emergency motions, bar-controlled programs, disciplinary non-protection, and lawyer self-regulation violate constitutional rights.

20. Plaintiff's counsel expressed the disfavored viewpoint that threatening subpoenas and litigation against judges, bar officers, lawyers, Wills for Heroes participants, and court-connected witnesses is lawful protected petitioning activity.

21. The Middle District Defendants treated that viewpoint differently from the viewpoint expressed by bar-connected or judge-protective parties who sought protection from Plaintiff's counsel's subpoenas, litigation threats, protests, criticism, and emergency motions.

22. The Middle District Defendants allegedly granted, heard, or acted promptly on emergency relief when the requested relief protected bar-connected entities or judge-connected interests, while denying, delaying, ignoring, or refusing hearings when Plaintiff sought protection from retaliation by those same power structures.

23. The ODC Defendants treated criticism of judges, courts, bar associations, disciplinary systems, and legal-aid malpractice differently from speech that

protects judges, courts, bar associations, disciplinary systems, and lawyer self-regulation.

24. The ODC Defendants refused to provide equal disciplinary protection when Plaintiff's counsel reported retaliation by court-connected and bar-connected actors, while preserving the possibility of discipline or professional pressure against Plaintiff's counsel for criticizing those actors.

25. The Middle District Defendants and ODC Defendants lacked any compelling, narrowly tailored, or lawful justification for burdening Plaintiff's speech based on viewpoint.

26. Plaintiff is entitled to declaratory relief, prospective injunctive relief, equal treatment of disfavored viewpoints, anti-retaliation protection, equal disciplinary protection, equal emergency-motion treatment, fees where available, costs where available, and all further relief the Court deems proper.

Count 3

First Amendment Petition Clause Violation Against the Middle District Defendants and ODC Defendants

27. Plaintiff incorporates all preceding paragraphs.

28. The elements of a Petition Clause violation are petitioning activity, burdening or retaliation against that activity, and causation between the petitioning activity and the adverse action.

29. The Middle District Defendants and ODC Defendants violated the Petition Clause because they burdened, chilled, delayed, ignored, selectively treated, or failed to protect Plaintiff's petitioning activity and Plaintiff's counsel's petitioning activity.

30. Plaintiff's counsel engaged in petitioning activity by threatening subpoenas, threatening litigation, filing litigation, filing TROs, filing motions for reconsideration, seeking sanctions, demanding preservation, identifying witnesses, and requesting judicial and disciplinary protection from retaliation.

31. Plaintiff engaged in petitioning activity by relying on counsel to file and prosecute 4:26-cv-1437 and related emergency motions challenging retaliation, bar exclusion, legal-aid malpractice, court-access barriers, and selective emergency-motion treatment.

32. The Middle District Defendants burdened petitioning by denying or delaying hearing access and by resolving disputed emergency-motion facts without requiring the adverse parties to respond.

33. The Middle District Defendants burdened petitioning by treating Plaintiff's counsel's threatened subpoenas and litigation as reasons to deny protection rather than as protected court-access tools.

34. The ODC Defendants burdened petitioning by failing to investigate retaliation against Plaintiff's counsel for filing complaints, threatening subpoenas, threatening litigation, criticizing judges, and seeking relief against court-connected actors.

35. The ODC Defendants burdened petitioning by allowing disciplinary pressure, ethics accusations, selective non-investigation, and professional-regulation threats to operate as a deterrent against Plaintiff's counsel's federal-court activity.

36. The adverse actions were causally connected to protected petitioning because the challenged conduct followed and responded to Plaintiff's counsel's subpoenas, litigation threats, complaints, filings, witness identifications, and criticism.

37. Plaintiff is entitled to declaratory relief, prospective injunctive relief, protection of petitioning activity, equal access to emergency process, disciplinary non-retaliation, fees where available, costs where available, and all further relief the Court deems proper.

Count 4

First Amendment Free Speech Violation Against the Middle District Defendants and ODC Defendants

38. Plaintiff incorporates all preceding paragraphs.

39. The elements of a First Amendment free speech violation are protected speech, restriction, punishment, or chilling of that speech, and lack of adequate constitutional justification.

40. The Middle District Defendants and ODC Defendants violated the First Amendment because they chilled, punished, burdened, or failed to protect protected speech criticizing judges, courts, bar associations, lawyer self-regulation, legal-aid malpractice, Wills for Heroes exclusion, emergency-motion disparities, and disciplinary non-protection.

41. Plaintiff's counsel engaged in protected speech when she criticized the denial or delay of anti-retaliation TROs, criticized the handling of Wills for Heroes and Wills for Veterans, criticized bar-connected retaliation, criticized judicial self-protection, and criticized disciplinary failure to investigate misconduct by powerful legal actors.

42. The Middle District Defendants burdened that speech by refusing to provide ordinary emergency-motion process when Plaintiff's counsel's speech targeted judges, courts, bar associations, and lawyer-regulatory actors.

43. The Middle District Defendants burdened that speech by treating plain criticism, litigation threats, and subpoena threats as harm or misconduct instead of protected advocacy.

44. The ODC Defendants burdened that speech by allowing disciplinary authority or disciplinary inaction to chill counsel's criticism of judges, courts, lawyers, legal-aid malpractice, and disciplinary favoritism.

45. The ODC Defendants burdened that speech by refusing to give the same protective response to complaints against judges, bar actors, and court-connected lawyers that would be given to complaints against less powerful lawyers.

46. The Middle District Defendants and ODC Defendants lacked any lawful justification for chilling or selectively burdening speech because it was forceful, critical, colloquial, anti-court, anti-bar, anti-lawyer-regulation, or directed at powerful legal-system actors.

47. Plaintiff is entitled to declaratory relief, prospective injunctive relief, speech protection, equal disciplinary protection, equal emergency-motion treatment,

fees where available, costs where available, and all further relief the Court deems proper.

Count 5

First Amendment Expressive Association Violation Against the Middle District Defendants and ODC Defendants

48. Plaintiff incorporates all preceding paragraphs.

49. The elements of expressive association are expressive association, government burden on that association, and failure of the burden under constitutional scrutiny.

50. Plaintiff, Plaintiff's counsel, SLAAY, disabled veterans, legal-aid clients, witnesses, volunteers, bar members, and coalition partners engaged in expressive association by organizing around Wills for Heroes, Wills for Veterans, legal-aid reform, anti-retaliation protection, court-access advocacy, disability and veterans services, and criticism of lawyer self-regulation.

51. The Middle District Defendants burdened expressive association by denying or delaying emergency protection from retaliation that interfered with Plaintiff's counsel's ability to associate with SLAAY, veterans, clients, witnesses, volunteers, bar members, and coalition partners.

52. The Middle District Defendants burdened expressive association by treating association with Plaintiff's counsel's litigation, subpoenas, protests, criticism, and anti-retaliation advocacy as grounds for adverse treatment or non-protection.

53. The ODC Defendants burdened expressive association by failing to protect Plaintiff's counsel and associated clients, witnesses, and organizations from disciplinary, professional, and reputational retaliation by legal-system actors.

54. The ODC Defendants burdened expressive association by allowing disciplinary pressure to discourage attorneys, witnesses, bar members, and legal-aid actors from associating with Plaintiff's counsel in litigation and public criticism of courts and lawyers.

55. The burdens on association were not narrowly tailored and did not serve a lawful compelling interest.

56. Plaintiff is entitled to declaratory relief, prospective injunctive relief, protection of expressive association, equal disciplinary protection, equal emergency-motion treatment, fees where available, costs where available, and all further relief the Court deems proper.

Count 6

Access to Courts Against the Middle District Defendants and ODC Defendants

57. Plaintiff incorporates all preceding paragraphs.

58. The elements of access to courts are protected court-access activity, official conduct that obstructs or burdens meaningful access, and actual or imminent injury to litigation rights.

59. The Middle District Defendants and ODC Defendants violated Plaintiff's right of access to courts because they obstructed, chilled, delayed, or failed to protect Plaintiff's ability to litigate 4:26-cv-1437 and related emergency matters through chosen counsel.

60. Plaintiff required meaningful access to the Court to obtain prompt emergency review of ongoing retaliation, protected petitioning, threatened subpoenas, witness access, bar exclusion, disciplinary non-protection, and Wills for Heroes retaliation.

61. The Middle District Defendants impaired access by denying, delaying, ignoring, or refusing to schedule emergency anti-retaliation motions while disputed retaliation, motive, causation, and witness-intimidation issues remained active.

62. The Middle District Defendants impaired access by making or accepting factual conclusions without briefing, evidence, or cross-examination in a way that deprived Plaintiff of adversarial testing of emergency constitutional facts.

63. The ODC Defendants impaired access by allowing disciplinary threats, selective non-investigation, and professional pressure to chill Plaintiff's counsel's ability to threaten subpoenas, call witnesses, criticize judicial misconduct, and litigate against legal-system actors.

64. The ODC Defendants impaired access by refusing to protect Plaintiff's counsel from retaliation that directly affected her ability to represent Plaintiff, subpoena witnesses, preserve evidence, and pursue emergency relief.

65. Plaintiff suffered actual and imminent injury because the challenged conduct reduced the practical value of emergency motions, chilled witnesses and participants, burdened counsel's representation, delayed protection, and increased retaliation during active litigation.

66. Plaintiff is entitled to declaratory relief, prospective injunctive relief, hearing access, equal emergency-motion processing, disciplinary non-retaliation,

preservation relief, fees where available, costs where available, and all further relief the Court deems proper.

Count 7

Fifth Amendment Due Process Against the Middle District Defendants

67. Plaintiff incorporates all preceding paragraphs.

68. The elements of Fifth Amendment due process are deprivation of a protected liberty or property interest by a federal actor without constitutionally adequate process.

69. The Middle District Defendants violated the Fifth Amendment because they deprived Plaintiff of court access, emergency-motion process, chosen counsel protections, meaningful petitioning, reputation-related interests, and litigation rights without adequate process.

70. Plaintiff had protected interests in meaningful access to the Court, neutral adjudication, counsel's ability to threaten subpoenas and litigation, and the fair processing of emergency constitutional motions.

71. The Middle District Defendants deprived Plaintiff of those interests by denying or delaying anti-retaliation TRO relief without requiring Defendants to respond, without scheduling a hearing, without receiving evidence, and without allowing cross-examination on disputed causation and motive facts.

72. The Middle District Defendants deprived Plaintiff of due process by resolving or accepting disputed facts concerning protected activity, adverse action, causation, retaliation, irreparable harm, and Defendants' reasons without the process required before such findings can fairly be made.

73. The Middle District Defendants deprived Plaintiff of due process by failing to provide a neutral process when the requested emergency relief challenged judges, courts, bar associations, lawyer-regulatory entities, and entities that allegedly support increased judicial and lawyer power.

74. Plaintiff is entitled to declaratory relief, prospective injunctive relief, neutral adjudication, hearing access, reassignment or outside-judge relief where necessary, fees where available, costs where available, and all further relief the Court deems proper.

Count 8

Fourteenth Amendment Procedural Due Process Against the ODC Defendants

75. Plaintiff incorporates all preceding paragraphs.

76. The elements of procedural due process are a protected liberty or property interest, deprivation under color of state law, and inadequate process.

77. The ODC Defendants violated procedural due process because they used, threatened to use, allowed, or selectively withheld disciplinary authority in a manner that burdened Plaintiff's counsel's professional status, reputation, law license, client relationships, and ability to represent Plaintiff without neutral process.

78. Plaintiff's counsel has protected interests in professional reputation, law-license status, disciplinary fairness, the right to represent clients, the right to threaten subpoenas and litigation, and the right to criticize judges and lawyers without retaliatory disciplinary exposure.

79. The ODC Defendants acted under color of state law because they exercise disciplinary investigation, prosecution, supervision, and enforcement authority through Pennsylvania's attorney-disciplinary system.

80. The ODC Defendants deprived Plaintiff and Plaintiff's counsel of fair process by refusing to neutrally investigate retaliation by judges, bar officers, lawyers, and court-connected actors while permitting disciplinary pressure to chill counsel's protected activity.

81. The ODC Defendants deprived Plaintiff and Plaintiff's counsel of fair process by failing to apply consistent standards to complaints and threats

involving powerful court-connected actors and complaints or threats involving Plaintiff's counsel.

82. The process was inadequate because ODC's selective non-protection and threatened disciplinary environment provided no neutral decisionmaker, no consistent standards, no meaningful protection from retaliation, and no timely mechanism to stop ongoing chilling of federal-court activity.

83. Plaintiff is entitled to declaratory relief, prospective injunctive relief, neutral disciplinary processing, disciplinary non-retaliation, equal investigation, equal protection from retaliation, fees where available, costs where available, and all further relief the Court deems proper.

Count 9

Equal Protection, Selective Enforcement and Selective Exclusion Against the Middle District Defendants and ODC Defendants

84. Plaintiff incorporates all preceding paragraphs.

85. The elements of selective enforcement or selective exclusion are different treatment from similarly situated persons, discriminatory or retaliatory purpose, and lack of lawful justification.

86. The Middle District Defendants and ODC Defendants violated equal protection principles because they treated Plaintiff, Plaintiff's counsel,

SLAAY, and similarly situated litigants differently from persons who do not criticize courts, judges, bar associations, and lawyer self-regulation.

87. The Middle District Defendants treated emergency motions filed by or benefiting judge-protective and bar-connected entities more favorably than emergency motions filed by Plaintiff or Plaintiff's counsel against judges, courts, bar actors, and legal-regulatory entities.

88. The Middle District Defendants allegedly granted, heard, or acted promptly on TROs protecting bar-connected interests while denying, delaying, ignoring, or refusing hearings on anti-retaliation TROs filed by Plaintiff, Plaintiff's counsel, or counsel's clients.

89. The ODC Defendants treated complaints or concerns against Plaintiff's counsel, critics of courts, and attorneys threatening litigation differently from complaints or concerns against judges, bar officers, court-connected lawyers, and legal-aid actors who retaliated against Plaintiff's counsel.

90. The ODC Defendants selectively failed to investigate powerful legal-system actors while preserving disciplinary pressure against counsel who criticized those actors.

91. The different treatment was motivated by viewpoint, retaliation, court self-protection, bar self-protection, institutional favoritism, and hostility to protected litigation and subpoena threats.

92. The different treatment lacked a lawful basis because the Constitution does not permit courts or disciplinary officials to give better treatment to speakers who protect judges and lawyers than to speakers who criticize them.

93. Plaintiff is entitled to declaratory relief, prospective injunctive relief, equal emergency-motion treatment, equal disciplinary protection, fees where available, costs where available, and all further relief the Court deems proper.

Count 10

Equal Protection, Class of One Against the Middle District Defendants and ODC Defendants

94. Plaintiff incorporates all preceding paragraphs.

95. The elements of class-of-one equal protection are intentional differential treatment from similarly situated persons, lack of rational basis, and discriminatory intent.

96. The Middle District Defendants and ODC Defendants violated class-of-one equal protection because they intentionally treated Plaintiff, Plaintiff's

counsel, SLAAY, and counsel's clients differently from similarly situated litigants, lawyers, nonprofits, witnesses, and court users without a rational basis.

97. Plaintiff and Plaintiff's counsel were similarly situated to other litigants and lawyers who file emergency motions, threaten subpoenas, threaten litigation, criticize opposing parties, seek preservation, and request hearings.

98. The Middle District Defendants treated Plaintiff and Plaintiff's counsel differently by denying, delaying, ignoring, or refusing hearing access when the emergency motion challenged courts, judges, bar associations, lawyer-regulatory entities, and judge-protective organizations.

99. The ODC Defendants treated Plaintiff's counsel differently from other attorneys by allowing disciplinary pressure and selective non-protection to attach to her protected criticism, threatened subpoenas, threatened litigation, and complaints about judges and lawyers.

100. The differential treatment lacked a rational basis because threatened subpoenas, threatened litigation, witness identification, public criticism, and emergency motions are ordinary litigation conduct and protected petitioning activity.

101. The differential treatment was intentional because it followed Plaintiff's counsel's protected acts, targeted the content and viewpoint of her speech, and favored institutional protection of judges, courts, lawyers, and bar associations over equal process.

102. Plaintiff is entitled to declaratory relief, prospective injunctive relief, equal treatment, equal disciplinary protection, equal emergency-motion treatment, fees where available, costs where available, and all further relief the Court deems proper.

Count 11

Unconstitutional Conditions Against the Middle District Defendants and ODC Defendants

103. Plaintiff incorporates all preceding paragraphs.

104. The elements of unconstitutional conditions are a government benefit, status, access, privilege, or process conditioned on surrender of a constitutional right, and lack of lawful justification for the condition.

105. The Middle District Defendants and ODC Defendants violated the unconstitutional-conditions doctrine because they conditioned or allowed others to condition court access, emergency hearing access, disciplinary peace, professional inclusion, bar participation, Wills for Heroes

participation, and legal-system protection on the surrender of protected speech and petitioning rights.

106. Plaintiff and Plaintiff's counsel had the right to threaten subpoenas, threaten litigation, file litigation, criticize judges, criticize courts, criticize bar associations, and identify witnesses without losing equal court process or disciplinary protection.

107. The Middle District Defendants imposed unconstitutional conditions by treating emergency relief as less available when Plaintiff's counsel refused to stop criticizing judges and lawyers, threatening subpoenas, threatening litigation, and challenging legal-system actors.

108. The ODC Defendants imposed unconstitutional conditions by allowing disciplinary peace, disciplinary non-interference, or disciplinary protection to depend on whether Plaintiff's counsel refrained from criticizing judges, threatening subpoenas, threatening litigation, or pursuing claims against powerful legal actors.

109. The conditions were unconstitutional because government actors may not require litigants or counsel to give up First Amendment petitioning, speech, association, court-access, or subpoena rights to receive ordinary legal process.

110. Plaintiff is entitled to declaratory relief, prospective injunctive relief, removal of unconstitutional conditions, equal court process, equal disciplinary protection, fees where available, costs where available, and all further relief the Court deems proper.

Count 12

Article 3 Judicial Power and Separation of Powers Against the Middle District Defendants

111. Plaintiff incorporates all preceding paragraphs.

112. The elements of an Article 3 judicial-power and separation-of-powers violation are federal judicial action that exceeds the judicial power, alters substantive rights without constitutional authority, or fails to decide cases and controversies through neutral adjudication.

113. The Middle District Defendants violated Article 3 because they used judicial power, docket control, emergency-motion discretion, abstention doctrines, court-created procedural doctrines, and sua sponte case-management practices to diminish Plaintiff's access to neutral adjudication and emergency relief.

114. Plaintiff filed claims and emergency motions that required neutral adjudication, briefing, hearings, evidence, and legal analysis.

115. The Middle District Defendants exceeded the proper judicial role by allegedly using judicial discretion to protect courts, judges, bar associations, lawyer-regulatory entities, and judge-protective actors from subpoenas, litigation, protest, and criticism.

116. The Middle District Defendants exceeded the proper judicial role by resolving or accepting disputed retaliation causation facts without adversarial process, despite the fact that those facts belonged to the merits of Plaintiff's constitutional claims.

117. The Middle District Defendants exceeded the proper judicial role by applying court-created doctrines and discretionary practices in a way that allegedly increased judicial and lawyer power while reducing Plaintiff's jury, hearing, emergency-relief, and court-access rights.

118. Plaintiff is entitled to declaratory relief, prospective injunctive relief, neutral adjudication, equal emergency-motion scheduling, outside-judge assignment where necessary, fees where available, costs where available, and all further relief the Court deems proper.

Count 13

Article 6 Oath Clause Against the Middle District Defendants and ODC Defendants

119. Plaintiff incorporates all preceding paragraphs.

120. The elements of an Article 6 oath-based constitutional claim are official duty to support the Constitution, official action inconsistent with that duty, and resulting deprivation of constitutional rights.

121. The Middle District Defendants and ODC Defendants violated oath-based constitutional duties because they exercised federal judicial power and state disciplinary power in a manner inconsistent with the First Amendment, due process, equal protection, access to courts, and neutral adjudication.

122. The Middle District Defendants had a duty to support the Constitution when processing emergency motions, deciding whether to schedule hearings, applying Rule 65, applying causation standards, and treating litigants who criticize judges and lawyers.

123. The Middle District Defendants violated that duty by allegedly delaying, denying, ignoring, or refusing hearing access because Plaintiff's counsel threatened subpoenas, threatened litigation, criticized judges, criticized courts, and sought relief against judicial and bar-connected actors.

124. The ODC Defendants had a duty to support the Constitution when investigating attorney misconduct, responding to complaints, administering

disciplinary authority, and protecting federal-court participation from retaliation.

125. The ODC Defendants violated that duty by allegedly refusing equal disciplinary protection when judges, bar officers, lawyers, and court-connected actors retaliated against Plaintiff's counsel for protected speech and petitioning.

126. Plaintiff is entitled to declaratory relief, prospective injunctive relief, equal constitutional treatment, equal disciplinary protection, equal emergency-motion treatment, fees where available, costs where available, and all further relief the Court deems proper.

Count 14

42 U.S.C. § 1985(2) Retaliation for Federal Court Participation Against the Middle District Co-Conspirators and ODC Defendants

127. Plaintiff incorporates all preceding paragraphs.

128. The elements of 42 U.S.C. § 1985(2) retaliation for federal court participation are a conspiracy to deter a party or witness from attending or testifying in federal court, or to injure a party or witness because of federal-court participation, and resulting injury.

129. The Middle District co-conspirators and ODC Defendants violated 42 U.S.C. § 1985(2) because they conspired, participated in, aided, or failed to prevent efforts to deter Plaintiff, Plaintiff's counsel, SLAAY, witnesses, clients, volunteers, veterans, and cooperating persons from participating freely in 4:26-cv-1437 and related federal proceedings.

130. Plaintiff's counsel identified judges, lawyers, bar actors, Wills for Heroes participants, court-connected persons, and disciplinary actors as potential witnesses in federal litigation.

131. Plaintiff's counsel threatened subpoenas, requested preservation, and stated that witnesses could be called to testify about retaliation, Wills for Heroes, court access, bar association conduct, and legal-aid malpractice.

132. The challenged conduct injured Plaintiff and Plaintiff's counsel because it chilled testimony, witness cooperation, subpoena activity, emergency motions, professional relationships, client representation, and meaningful participation in federal proceedings.

133. The Middle District co-conspirators participated by treating Plaintiff's witness, subpoena, and litigation threats as grounds for adverse emergency-motion treatment rather than protecting federal-court participation.

134. The ODC Defendants participated by failing to protect Plaintiff's counsel from disciplinary and professional retaliation connected to federal-court subpoenas, witnesses, complaints, and filings.

135. Plaintiff suffered injury through delayed emergency relief, chilled witnesses, impaired counsel, reputational harm, diversion of legal-aid resources, interference with subpoenas, and reduced ability to litigate 4:26-cv-1437.

136. Plaintiff is entitled to declaratory relief, prospective injunctive relief, protection of federal-court participation, anti-retaliation relief, witness-protection relief, fees where available, costs where available, and all further relief the Court deems proper.

Count 15

42 U.S.C. § 1985(3) Conspiracy to Deprive Equal Protection Against the Middle District Co-Conspirators and ODC Defendants

137. Plaintiff incorporates all preceding paragraphs.

138. The elements of 42 U.S.C. § 1985(3) are a conspiracy, purpose to deprive equal protection or equal privileges and immunities, an act in furtherance of the conspiracy, and injury or deprivation of a federal right.

139. The Middle District co-conspirators and ODC Defendants violated 42 U.S.C. § 1985(3) because they participated in or failed to prevent a conspiracy to deprive Plaintiff, Plaintiff's counsel, SLAAY, disabled veterans, legal-aid clients, witnesses, and similarly situated litigants of equal protection and equal access to court and disciplinary protection.

140. The conspiracy targeted Plaintiff and Plaintiff's counsel because they criticized courts, judges, bar associations, lawyer self-regulation, legal-aid malpractice, Wills for Heroes exclusion, and disciplinary non-protection.

141. The conspiracy deprived Plaintiff and Plaintiff's counsel of equal emergency-motion treatment, equal hearing access, equal disciplinary protection, equal protection from retaliation, equal subpoena rights, and equal ability to use federal litigation tools against powerful legal-system actors.

142. Acts in furtherance included delayed or denied TRO hearings, selective emergency-motion treatment, refusal to require briefing, treating subpoena threats as misconduct, refusing disciplinary protection, failing to investigate retaliation, and permitting bar-connected actors to retaliate without equal consequences.

143. Plaintiff suffered injury through chilled speech, chilled petitioning, impaired counsel, delayed emergency protection, witness intimidation, reputational harm, resource diversion, and unequal access to courts.

144. Plaintiff is entitled to declaratory relief, prospective injunctive relief, anti-conspiracy relief, equal protection, equal disciplinary protection, equal emergency-motion treatment, fees where available, costs where available, and all further relief the Court deems proper.

Count 16

42 U.S.C. § 1986 Failure to Prevent a § 1985 Conspiracy Against the ODC Defendants and Responsible Middle District Actors

145. Plaintiff incorporates all preceding paragraphs.

146. The elements of 42 U.S.C. § 1986 are knowledge of a Section 1985 conspiracy, power to prevent or aid in preventing it, neglect or refusal to do so, and resulting injury.

147. The ODC Defendants and responsible Middle District actors violated 42 U.S.C. § 1986 because they knew or had reason to know that legal-system actors were retaliating against Plaintiff, Plaintiff’s counsel, SLAAY, witnesses, clients, and cooperating persons for federal-court participation and protected petitioning.

148. The ODC Defendants had power to prevent or aid in preventing retaliation through investigation, discipline, guidance, intervention, referral, or neutral enforcement of attorney-disciplinary duties.

149. Responsible Middle District actors had power to prevent or aid in preventing retaliation through scheduling hearings, requiring briefing, preserving the status quo, protecting subpoenas, protecting witnesses, and ordering non-retaliation while emergency motions were litigated.

150. The ODC Defendants neglected or refused to prevent the conspiracy by failing to investigate, failing to protect Plaintiff's counsel, failing to address retaliation by judges and bar-connected actors, and allowing disciplinary pressure to chill protected litigation.

151. Responsible Middle District actors neglected or refused to prevent the conspiracy by delaying, denying, ignoring, or refusing hearing access and by failing to provide emergency anti-retaliation process.

152. Plaintiff suffered injury through delayed protection, chilled witnesses, impaired counsel, reputational harm, professional exclusion, legal-aid resource diversion, and reduced access to court.

153. Plaintiff is entitled to declaratory relief, prospective injunctive relief, anti-retaliation relief, equal disciplinary protection, equal emergency-motion

treatment, fees where available, costs where available, and all further relief the Court deems proper.

Count 17

Section 1983 Against the ODC Defendants

154. Plaintiff incorporates all preceding paragraphs.

155. The elements of Section 1983 are conduct committed under color of state law and deprivation of a right secured by the Constitution or laws of the United States.

156. The ODC Defendants acted under color of state law because they exercised Pennsylvania disciplinary authority, investigative authority, prosecutorial authority, supervisory authority, and official responsibility for attorney-discipline enforcement.

157. The ODC Defendants deprived Plaintiff and Plaintiff's counsel of rights secured by the First Amendment, Petition Clause, Fourteenth Amendment due process, Fourteenth Amendment equal protection, access to courts, and federal-court participation protections.

158. The ODC Defendants deprived those rights by failing to protect Plaintiff's counsel from retaliation for threatening subpoenas, threatening

litigation, filing litigation, criticizing judges, criticizing bar associations, criticizing legal-aid malpractice, and representing Plaintiff in 4:26-cv-1437.

159. The ODC Defendants deprived those rights by selectively refusing to investigate court-connected and bar-connected misconduct while allowing disciplinary authority to chill Plaintiff's counsel's protected activity.

160. The ODC Defendants deprived those rights by treating criticism of judges, courts, lawyers, bar associations, and lawyer self-regulation as disfavored speech instead of protected speech.

161. Plaintiff is entitled to declaratory relief, prospective injunctive relief under Ex parte Young principles, equal disciplinary protection, anti-retaliation relief, fees under 42 U.S.C. § 1988 where available, costs where available, and all further relief the Court deems proper.

Count 18

Bivens or Federal Equitable Constitutional Relief Against Responsible Middle District Federal Officers

162. Plaintiff incorporates all preceding paragraphs.

163. The elements of a federal constitutional claim against responsible federal officers are federal action and deprivation of rights secured by the Constitution, with relief limited as allowed by federal law.

164. Responsible Middle District federal officers violated Plaintiff's constitutional rights by denying, delaying, ignoring, or refusing to schedule hearings on emergency anti-retaliation motions because Plaintiff's counsel threatened subpoenas, threatened litigation, filed litigation, criticized judges, criticized courts, and challenged bar-connected power.

165. Responsible Middle District federal officers violated Plaintiff's constitutional rights by treating Plaintiff's protected litigation tools as harm to Defendants rather than as protected petitioning and lawful federal-court activity.

166. Responsible Middle District federal officers violated Plaintiff's constitutional rights by making or accepting factual causation conclusions without briefing, evidence, cross-examination, or neutral adversarial process.

167. Plaintiff pleads this count for declaratory and prospective equitable relief against responsible federal officers and preserves any available individual-capacity damages theory only to the extent federal law permits such relief.

168. Plaintiff is entitled to declaratory relief, prospective injunctive relief, equal emergency-motion treatment, hearing access, reassignment or outside-

judge relief where necessary, preservation relief, costs where available, and all further relief the Court deems proper.

Count 19

Declaratory Judgment Against the Middle District Defendants and ODC Defendants

169. Plaintiff incorporates all preceding paragraphs.

170. An actual controversy exists between Plaintiff and the Middle District Defendants and ODC Defendants concerning whether they may delay, deny, ignore, selectively process, selectively investigate, or refuse to protect emergency anti-retaliation claims because Plaintiff's counsel threatened subpoenas, threatened litigation, filed litigation, criticized judges, criticized courts, criticized bar associations, criticized legal-aid malpractice, or challenged lawyer self-regulation.

171. Plaintiff seeks a declaration that threatened subpoenas, threatened litigation, filed litigation, witness identification, preservation demands, emergency motions, criticism of judges, criticism of courts, criticism of bar associations, and criticism of legal-aid malpractice are protected speech and petitioning activity.

172. Plaintiff seeks a declaration that the Middle District Defendants may not deny, delay, ignore, or refuse to schedule emergency motions because Plaintiff, Plaintiff's counsel, or SLAAY threatens subpoenas, threatens litigation, criticizes judges, criticizes courts, or seeks relief against judge-connected or bar-connected actors.

173. Plaintiff seeks a declaration that the Middle District Defendants may not resolve disputed retaliation causation facts against Plaintiff without requiring briefing, receiving evidence, allowing cross-examination, and applying neutral emergency-motion procedures.

174. Plaintiff seeks a declaration that the ODC Defendants may not selectively refuse to investigate retaliation by judges, bar officers, lawyers, and court-connected actors while preserving disciplinary pressure against Plaintiff's counsel for protected criticism, subpoenas, and litigation threats.

175. Plaintiff seeks a declaration that the ODC Defendants must administer disciplinary authority neutrally and without viewpoint discrimination, retaliation, selective non-enforcement, or special protection for judges, courts, lawyers, bar associations, and lawyer-regulatory entities.

176. Declaratory relief will resolve the parties' legal controversy and guide future emergency-motion processing, disciplinary conduct, witness participation, subpoena activity, and anti-retaliation obligations.

177. Plaintiff is entitled to declaratory relief under 28 U.S.C. §§ 2201 and 2202, further necessary relief, costs where available, and all further relief the Court deems proper.

Count 20

Prospective Injunctive Relief Against the Middle District Defendants and ODC Defendants

178. Plaintiff incorporates all preceding paragraphs.

179. Plaintiff has no adequate remedy at law for ongoing constitutional injury caused by delayed emergency relief, selective hearing access, chilled subpoenas, chilled litigation, chilled speech, chilled witnesses, impaired counsel, and disciplinary non-protection.

180. Plaintiff will suffer irreparable harm absent prospective injunctive relief because loss of First Amendment freedoms, loss of emergency court access, chilled federal-court participation, chilled witness testimony, and impaired chosen counsel cannot be fully remedied by damages after final judgment.

181. Plaintiff is likely to succeed because the Middle District Defendants and ODC Defendants cannot lawfully retaliate against protected subpoenas, protected litigation threats, protected criticism, protected court-access activity, or protected advocacy.

182. The balance of harms favors Plaintiff because Defendants have no legitimate interest in retaliation, viewpoint discrimination, selective emergency-motion treatment, selective disciplinary non-protection, or chilling federal-court participation.

183. The public interest favors protection of First Amendment rights, equal access to courts, neutral emergency-motion scheduling, neutral disciplinary enforcement, subpoena rights, witness protection, and non-retaliation.

184. Plaintiff seeks an injunction requiring the Middle District Defendants to process Plaintiff's emergency motions under the same standards applied to similarly situated emergency motions by other litigants.

185. Plaintiff seeks an injunction requiring the Middle District Defendants to schedule prompt briefing and hearings before resolving disputed retaliation, causation, motive, subpoena, witness, or protected-activity facts against Plaintiff.

186. Plaintiff seeks an injunction prohibiting the Middle District Defendants from treating threatened subpoenas, threatened litigation, filed litigation, public criticism, or witness identification as a basis to deny emergency protection absent a lawful finding of frivolousness or abuse after notice and hearing.

187. Plaintiff seeks an injunction requiring the ODC Defendants to refrain from retaliating against Plaintiff's counsel for protected litigation activity, to investigate misconduct called to their attention without viewpoint discrimination, and to provide equal disciplinary protection when legal-system actors retaliate against protected petitioning.

188. Plaintiff seeks an injunction requiring the ODC Defendants to refrain from treating threatened subpoenas, threatened litigation, criticism of judges, criticism of courts, criticism of bar associations, or representation of Plaintiff as disciplinary misconduct absent a lawful finding of frivolousness, abuse, or rule violation after neutral process.

189. Plaintiff is entitled to prospective injunctive relief, preservation relief, equal emergency-motion treatment, equal disciplinary protection, fees where available, costs where available, and all further relief the Court deems proper.

**Conclusion**

190. Plaintiff respectfully requests that the Court direct Defendants respond to the Motions, schedule a hearing, and actually apply the Constitution and the law to the above-described Motion.

191. The Office of Disciplinary Counsel must investigate whether there are statistically significant differences in how the Court handles Younger abstention when it increases the Court's power versus when it does not.

192. Plaintiff will be able to present those differences to the Court.

193. The ODC has an independent duty to examine them, as does the Court.

194. Plaintiff respectfully requests that the Court direct Defendants respond to the Motions, schedule a hearing, and actually apply the Constitution and the law to the above-described Motion.

195. The Office of Disciplinary Counsel must investigate whether there are statistically significant differences in how the Court handles Younger abstention when it increases the Court's power versus when it does not.

196. Plaintiff will be able to present those differences to the Court, but the ODC has an independent duty to examine them, as does the Court.

197. Plaintiff requests the Court schedule a hearing regarding whether the Defendant Middle District of Pennsylvania is violating the Constitution with statistically significant differences in the way in which it handles discretion with the Younger doctrine.

Respectfully submitted,

/s/ Paige Martineau

Paige Martineau

Counsel for Plaintiff

Pa. I.D. No. 325096

SLAAY

Susquehanna Legal Aid for Adults and Youth

218 Pine Street

Williamsport, PA 17701

570-392-3025